**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
Karen B. Valenzuela (State Bar No. 357231)
Ryan B. Martin (State Bar No. 359876)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        jglatt@bursor.com
        kvalenzuela@bursor.com
        rmartin@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BLANCA FUENTES and ADAM GOTTLIEB, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| ROTISYSTEMS, INC. d/b/a ROLI ROTI, | |
| Defendant. | |

Plaintiffs Blanca Fuentes and Adam Gottlieb ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Rotisystems, Inc. d/b/a Roli Roti ("Defendant" or "Roli Roti").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations pertaining to themselves, which are based upon personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit concerning Defendant's false and misleading labeling and marketing on its Roli Roti Butcher's Organic Beef Bone Broth (the "Product")—manufactured, sold, and produced by Defendant—which claims to have 17 grams of protein per serving (the "Protein Representation").

2.      Contrary to Defendant's Protein Representation, testing of Defendant's Product by Plaintiffs' counsel found that the Product contains only approximately 65% of the protein that Defendant claims is in the Product.

3.      Because Defendant's Product is underfilled by approximately 35% of its label claim, Plaintiffs bring claims individually and on behalf of similarly situated purchasers of Defendant's Product for violations of (i) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq*.; (ii) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (iii) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (iv) breach of express warranty; and (v) unjust enrichment.

## PARTIES

4.      Plaintiff Blanca Fuentes is a citizen of California and resident of Antioch, California.  Plaintiff Fuentes purchased the Product regularly for the last two years and as recently as July 2025, from a Sprouts brick-and-mortar store in Brentwood, California.  Prior to purchasing Defendant's Beef Bone Broth Product, Plaintiff Fuentes saw and reasonably relied on Defendant's affirmative representation that the Product contains 17 grams of protein per serving.  Plaintiff Fuentes reasonably relied on this representation made on the Product's nutritional panel in choosing to purchase the Product.  Plaintiff Fuentes understood Defendant's representation to mean exactly what Defendant claims: that the Product contains 17 grams of protein per serving.  This

representation was part of the basis of the bargain in that she would not have purchased the Product or would not have purchased it on the same terms had she known Defendant's representation and warranty regarding its protein content is untrue. In making her purchase, Plaintiff Fuentes paid a price premium for the Product. As a direct result of Defendant's material misrepresentation, Plaintiff Fuentes suffered economic injuries.

5.    Plaintiff Fuentes remains interested in purchasing Defendant's Product in the future. However, Plaintiff Fuentes is unable to determine if the Product contains the amount of protein Defendant claims. So long as Defendant markets the Product as containing an amount of protein while containing less than that stated amount, when presented with false or misleading information when shopping, Plaintiff Fuentes will be unable to make informed decisions about whether to purchase Defendant's Product and will be unable to evaluate the different prices between Defendant's Product and competitors' products. Plaintiff Fuentes is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Product's protein content is accurately represented.

6.    Plaintiff Adam Gottlieb is a citizen of California and resident of Mill Valley, California. Plaintiff Gottlieb has been purchasing Defendant's Product weekly for the last six months. As recently as July 2025, Plaintiff Gottlieb made multiple purchases of Defendant's Product from brick-and-mortar stores in San Francisco and Marin counties, including Whole Foods, Nugget, and Costco. Prior to purchasing Defendant's Product, Plaintiff Gottlieb saw and reasonably relied on Defendant's affirmative representation that the Product contains 17 grams of protein per serving. Plaintiff Gottlieb reasonably relied on this representation made on the Product's nutritional panel in choosing to purchase the Product. Plaintiff Gottlieb understood Defendant's representation to mean exactly what Defendant claims: that the Product contains 17 grams of protein per serving. This representation was part of the basis of the bargain in that he would not have purchased the Product or would not have purchased it on the same terms had he known Defendant's representation and warranty regarding its protein content is untrue. In making his purchase, Plaintiff Gottlieb paid a price premium for the Product. As a direct result of Defendant's material misrepresentation, Plaintiff Gottlieb suffered economic injuries.

7.      Plaintiff Gottlieb remains interested in purchasing Defendant's Product in the future.  However, Plaintiff Gottlieb is unable to determine if the Product contains the amount of protein Defendant claims.  So long as Defendant markets the Product as containing an amount of protein while containing less than that stated amount, when presented with false or misleading information when shopping, Plaintiff Gottlieb will be unable to make informed decisions about whether to purchase Defendant's Product and will be unable to evaluate the different prices between Defendant's Product and competitors' products.  Plaintiff Gottlieb is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Product's protein content is accurately represented.

8.      Defendant Rotisystems, Inc. is a California corporation with its principal place of business in Oakland, California.  At all times relevant to this Complaint, Defendant has advertised, marketed, distributed, or sold the Product to consumers throughout the United States and California, including in this District.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed classes are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative classes, and most members of the proposed classes are citizens of states different from Defendant.

10.     This Court has general and personal jurisdiction over Defendant because Defendant is at home in this District as its headquarters are in Oakland, California.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL ALLEGATIONS

I.      **PROTEIN AND BONE BROTH**

12.     Protein is an essential macronutrient for overall health, muscle growth, bodily maintenance, and function.  Protein builds and repairs cells and body tissue, promotes immune

responses, fluid balance, vision, hormone production, antibodies, and enzymes.[1]

13.    As such, the American Heart Association suggests that protein should account for 10% to 35% of one's daily caloric intake.[2]  This means someone who consumes 2,000 calories a day should be consuming 50-175 grams of protein a day.[3]

14.    Though most Americans may consume the recommended amount of protein a day through consumption of meat, dairy, beans, and nuts, many rely on additional sources of protein, like bone broth, to meet their protein intake goals.[4]

15.    For these reasons, bone broth has boomed in popularity.  From fitness influencers using it to support muscle growth to Gweneth Paltrow's daily lunch,[5] bone broth has been hailed as a quality source of protein.  Not surprisingly then, the bone broth industry is expected to generate a quarter of a billion dollars in 2025.[6]

---

[1] FDA *Nutrition Facts Sheet – Protein* https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/InteractiveNFL_Protein_October2021.pdf

[2] *Protein: What's Enough?* American Heart Association (last updated Aug. 28, 2024), https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/nutrition-basics/protein-and-heart-health#:~:text=How%20much%20protein%20do%20you,daily%20calories%20come%20from%20protein.

[3] FDA *Nutrition Facts Sheet – Protein* https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/InteractiveNFL_Protein_October2021.pdf.

[4] *Bone Broth Review,* ConsumerLab (May 14, 2025), https://www.consumerlab.com/reviews/bone-broth-review/bone-broth/?search=Kettle%20&%20Fire.

[5] Dear Media [@dearmedia], *#gwenethpaltrow shares her daily wellness routine on The Art of Being Well*, Tɪᴋ Tᴏᴋ, Mar. 13, 2023, https://www.tiktok.com/@dearmedia/video/7210104654460521774?is_from_webapp=1&web_id=7162329180090058286.

[6] *See Bone Broth Market Size, Share, Growth, and Industry Analysis, By Type (Powder, Liquid, Tablet, and Bars), By Application (Fortified Foods, Fortified Beverages, Dietary Supplements, and Pharmaceuticals), and Regional Forecast to 2033,* Bᴜsɪɴᴇss Rᴇsᴇᴀʀᴄʜ Iɴsɪɢʜᴛs (last updated June 26, 2025), https://www.businessresearchinsights.com/market-reports/bone-broth-market-119047.

16.     Bone broth is a stock often used as the liquid component when cooking, most frequently for soups, sauces, and gravies.  It can also be consumed as a drink.  Aside from flavor, bone broth provides nutrients, especially minerals, derived from animal tissues.[7]

17.     Defendant benefits from charging a substantial price premium for its Product.  For instance, other bone broth products on the market, which claim to have less protein and provide more servings, retail for significantly less than the Product Plaintiffs purchased, which currently sells for $8.99 on Sprouts.com ($0.37/fl. oz).[8]

## II.     ROLI ROTI PRODUCTS

18.     Defendant Roli Roti sells sous vide and bone broth products.  Defendant sells four versions of its bone broth products: chicken, beef, ginger and turmeric, and turkey bone broth.  At issue here is Defendant's beef bone broth, which Defendant sells with a nutrition label claiming the Product contains 17 grams of protein.

19.     Defendant's Product is sold throughout the United States and California.  Defendant sells its Product online through Amazon and Instacart as well as through brick-and-mortar stores like Costco, Safeway, WinCo, Publix, and Whole Foods, among others.

---

[7] Jon Johnson, *What are the benefits of bone broth?* Medical News Today (Mar. 13, 2023), https://www.medicalnewstoday.com/articles/323903.

[8] ***Compare*** *Roli Roti Butcher's 24 oz Organic Beef Bone Broth*, Sprouts, https://shop.sprouts.com/store/sprouts/products/17624864-roliroti-organic-beef-bone-broth-24-oz (last accessed August 13, 2025) ***with*** *Swanson's 32 oz 100% Beef Broth,* Amazon, https://www.amazon.com/Swanson-Less-Sodium-Beef-Broth/dp/B000VDSY86/ref=sr_1_33?crid=2HOLX33I59911&dib=eyJ2IjoiMSJ9.-k87jE2MSknqIJzUH-8S43wjaACkfTgragdPzNR0X-IAELZuybVT3QHuRokmuLdTrCx4Pb7sAC35fHYC0myLmsG1JeR_SVs3wuZAWPsND-_Lrp8DDWY0NdnBkt2ISymCwB8UzINIDzgfHLHp5WUDuiG_41bo3vIHjd_o1CiT_9KIDqYC3OGu5k0qEIzLU-A55EqZNgX3glDXXQCOIkMnnpGBbkfFdwgTTnrDKWY76T5ggMCMeeneprEUIj7mwpqOslLpZJPLjzYw6zX13H0vqvvNs4bvKFjtorjv0rTp0Nk.t25Wi08jXoJX-XkrbXQy7kUpJNHkvohsqfxjYuNzDOg&dib_tag=se&keywords=beef+bone+broth&qid=1752622568&sprefix=beef+bone+broth%2Caps%2C154&sr=8-33 (last accessed August 13, 2025) (containing 3 grams of protein per serving, retailing at $2.52 or $0.08/oz) ***and with*** *Pacific Foods' 32 oz Organic Beef Bone Broth*, Target, https://www.target.com/p/pacific-foods-gluten-free-organic-bone-broth-beef-32oz/-/A-78778379?sid=1208S&afid=google&TCID=OGS&CPNG=Dry+Grocery&adgroup=212-18 (last accessed August 13, 2025) (containing 8 grams of protein per serving, retailing at $6.49 or $0.20/oz).

20.     The brand has garnered significant praise because of its high protein content.  As one review noted[9]:



21.     Unfortunately, this is not entirely the case.

## III.    DEFENDANT'S PRODUCT CONTAINS LESS THAN THE STATED AMOUNT OF PROTEIN

22.     On May 27, 2025, Plaintiffs' counsel commissioned testing of Defendant's 17-gram Product.  The testing was conducted by a third party ISO/IEC 17025:2005 accredited laboratory using AOAC methodology.

***Figure 1 – Image Taken By The Laboratory Testing Defendant's Product***

23.     That testing found Defendant's Product was woefully lacking in protein; it revealed the Product contained only 11.14 grams of protein, only about 65% of the represented amount.

---

[9] Threads, @*livinglizalou*, available https://www.threads.com/@livinglizalou/post/C7kb2IIu4kJ.

24.    At all times relevant, Defendant was aware of, or should have been aware of, this underfill.  Defendant boasts on its website's FAQ page that what sets it apart from other bone broths is its "proprietary" method that allows it to "make sure that every bottle is filled with only the good stuff."[10]  Notwithstanding this, Defendant boasts that its Product is "packed with protein."[11]  As such, Defendant is acutely aware of the importance consumers place on protein content, yet deceives them anyway by selling a protein-underfilled product.

25.    Further evincing Defendant's knowledge of the underfilled nature of its Product, in or around July 8, 2025 (as determined through the web archives of Defendant's website), Defendant updated its Product pictures on its website.  The new images featured a new nutrition 11-gram label that nearly matches the protein content Plaintiffs' counsel's testing found.

**[PAGE INTENTIONALLY LEFT BLANK]**

---

[10] *Bone Broth*, Roli Roti, https://roliroti.com/faqs/ (last accessed August 13, 2025).

[11] *Id*.

*Figure 2[12]*

26.     On August 16, 2025, Plaintiffs' counsel confirmed that this corrected 11-gram label is portrayed on the Product in at least one brick-and-mortar grocery store.  Discovery will show whether and when Defendant replaced the Product with this 11-gram label in all grocery stores.

27.     Prior to this point, Defendant's misleading Protein Representation was pervasive in its marketing and advertising of the Product both online and in stores.

28.     Remarkably, even though Defendant subsequently changed its labeling to match the amount of protein Plaintiffs' counsel's testing found, as late as August 21, 2025, Defendant continued to sell its Product with a misleading 17-gram representation online.

---

[12] *Organic Beef Bone Broth*, ROLI ROTI, https://roliroti.com/products/organic-beef-broth/ (last accessed Aug. 20, 2025).

29.    For example, as recently as August 21, 2025, Defendant continued to claim the Product contained 17 grams of protein on its Amazon Product page.  A consumer would only know that Defendant was actually selling the revised lower protein product if they were to scroll to a second image.[13]



*Figure 3*[14]

30.    Indeed, a consumer purchasing Defendant's Product on Amazon would only see the details of the Product's nutrition facts if they scrolled through the Product photos.  At the same

[13] At the same time, even this 10-gram label is different than the 11-gram label that Defendant represents on its website and sells in some stores.

[14] Screenshot of Defendant's Amazon Product page, taken on July 25, 2025.

1    time, and much more prominently, Defendant maintained the 17 gram Protein Representation

2    prominently on the landing page under the Nutrition summary.  *See* Figure 3.



*Figure 4*[15]

31.    Additionally, a picture of the 17 gram nutrition label still remains as a photo of the

Product, thereby continuing to deceive consumers.  *See* Figure 4.

32.    Defendant's different claims, labels, and misrepresentations are completely

misleading.  Consumers are only able to find the true clarifying information if they investigate the

truth of Defendant's prominent Protein Representation on the sales page.

---

[15] Screenshot taken August 22, 2025.

33.     Defendant makes similar misleading Protein Representations in other sales channels.  For example, as recently as August 21, 2025, the Product page on Sprouts Market's website displayed a protein content of 17 grams.



*Figure 5*

34.     Retailers obtain the information about the products they carry from the product manufacturers.  Accordingly, these retailers obtained the information about the Product from Defendant who is in a unique position to know and control the facts of its Product.  Thus, even if Defendant recently updated its physical Product and Product labels to reflect 11 grams of protein, Defendant failed to update retailers and so continued to misleadingly sell its Product with false and misleading labeling.

35.     Thus, throughout the applicable statute of limitations period, Defendant pervasively sold its Product with a nutrition label stating that the Product contained 17 grams of protein when it actually contained 11 grams of protein.

## IV.     DEFENDANT'S PRODUCT IS MISBRANDED

36.     Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343, a food product is misbranded when its labeling is false or misleading.  As such, a product that overstates the amount of protein in its Nutrition Facts Panel is misbranded within the meaning of 21 U.S.C. § 343(a)(1).  FDA regulations implementing this provision require that the declared amount of

1    protein reflect the actual content of the product and meet minimum accuracy standards.  *See* 21

2    C.F.R. § 101.9(g).

3         37.     Specifically, 21 C.F.R. § 101.9(g)(4)(ii) provides that for nutrients such as protein,

4    the actual amount in the product must be no less than 80 percent of the value declared on the

5    Nutrition Facts label.  If laboratory analysis shows that the protein content falls below this

6    threshold, the food is deemed misbranded.  These regulatory requirements apply regardless of

7    whether any front-of-package protein claim is made; they govern the Nutrition Facts Panel itself.

8    Defendant's Product fails to meet these requirements because the actual protein content is

9    materially lower than the amount stated on the Nutrition Facts label.

10         38.     California law independently prohibits false or misleading food labeling.

11    California's Health and Safety Code provides that "[a]ny food is misbranded if its labeling is false

12    or misleading[.]"  Cal. Health & Safety Code § 110660.  California also incorporates federal food

13    labeling requirements, including those in Title 21 of the Code of Federal Regulations.  *See* Cal.

14    Health & Safety Code § 110100(a).

15         39.     Defendant's Product's label, which Plaintiffs and Members of the Classes reviewed

16    and relied on when making their purchases, materially overstates the protein content in the

17    Nutrition Facts Panel and fails to comply with applicable federal and state regulations.  As a result,

18    the Product is misbranded under both federal and California law.[16]

19         40.     Defendant's misleading and deceptive practices proximately caused harm to

20    Plaintiffs and the Class Members who suffered an injury in fact and lost money as a result of

21    Defendant's wrongful conduct.

**V.    DEFENDANT'S MISREPRESENTATIONS INJURED PLAINTIFFS AND CLASS MEMBERS**

23         41.     Defendant's Product does not contain, or risks not containing, the represented

24    quantity of protein.  Therefore, Defendant's representations are false and misleading and

25    consumers, like Plaintiffs, have been injured.

26         42.     The amount of protein in the Product is material to consumers.  It should come as no

---

[16] Plaintiffs do not ground their claims on violations of FDA regulations.  Their claims are based on violations of California consumer protection statutes.

surprise that "'[c]onsumers often rely on [] claims for health-related information, and this information can affect their evaluations and choices.'"[17]  This is underscored by consumer research specific to protein claims.  "According to an Innova Market Insights … global survey in 2022, 1 in 5 consumers said they changed their protein intake in the past 12 months, with 17% seeking high-protein products.  Protein is now a key selling point.  Innova report[ed] a 10% [compound annual growth rate] in the number of food and beverage new-product launches making protein claims in 2017-2022."[18]

43.    This trend is particularly true for bone broth products.  As BlueBird Provisions, a producer of bone broth products explained, "[b]one broth protein shakes have become increasingly popular among health-conscious consumers due to their numerous health benefits."[19]  By way of example, during the COVID-19 pandemic, the bone broth market "witnessed a spike in the demand for animal protein-infused products, which boosted the demand for bone-based broths.  Thus, to maintain immunity and overall health status, bone-based broths were consumed at a higher level in the pandemic phase."[20]  Bone broth has remained a consistent part of health conscious, protein-focused diets.

44.    Given consumers' interest in high protein products, Defendant sought to capitalize on this desire by representing to consumers that its Product is a good source of protein.  Consumers

---

[17] Lucas Cuni-Mertz, et al., *How Consumers Are Swayed By Products' Nutrient Content and Processing Claims*, UNIV. OF ARKANSAS, SAM M. WALTON COLLEGE OF BUS. (Nov. 15, 2021) *available* https://walton.uark.edu/insights/posts/how-consumers-are-swayed-by-products-nutrient-content-and-processing-claims.php.

[18] Jennifer Grebow, *Protein Attracts New Customers: 2023 Ingredient Trends for Food, Drinks, Dietary Supplements, and Natural Products*, NUTRITIONAL OUTLOOK (Jan. 25, 2023) *available* https://www.nutritionaloutlook.com/view/protein-attracts-new-customers-2023-ingredient-trends-for-food-drinks-dietary-supplements-and-natural-products.

[19] Connor Meakin, *Bone Broth Market Size*, BLUEBIRD PROVISIONS, *available* https://bluebirdprovisions.co/blogs/news/bone-broth-market-size#:~:text=Growth%20in%20Bone%20Broth%20Protein%20Market,increasingly%20turning%20to%20nutritional%20supplements.

[20] *Bone Broth Market Size, Share & COVID 19 Impact Analysis, By Type (Chicken, Beef, Turkey, and Others), Distribution Channel [Foodservice and Retail (Supermarkets/Hypermarkets, Specialty Stores, Online Retail and Others)], and Regional Forecast, 2023-2030*, FORTUNE BUSINESS INSIGHTS, available https://www.fortunebusinessinsights.com/bone-broth-market-106041.

1  lack the ability to test or independently ascertain or verify whether the Product contains the true

2  levels of protein Defendant claims.  Thus, consumers rely on Defendant to truthfully and honestly

3  report the protein content of the Product on the packaging.

4       45.    Yet, when consumers look at the Product's packaging, they are led to believe that

5  the Product has significantly more protein than it actually contains because of Defendant's false

6  and misleading Protein Representation.

7  **FED. R. CIV. P. 9(b) ALLEGATIONS**

8       46.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud

9  or mistake, a party must state with particularity the circumstances constituting fraud or mistake.

10  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  To

11  the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the

12  requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

13       47.    **WHO:** Defendant Rotisystems, Inc.

14       48.    **WHAT:** Defendant's conduct is deceptive because it deceives consumers into

15  believing that the Product contains more protein per serving than the Product actually contains.

16  Defendant fails to accurately fill the Product with the amount of protein in its Protein

17  Representation.  Defendant knew or should have known, as the manufacturer and marketer of the

18  Product with superior knowledge of the composition of its Product, that this information is material

19  to reasonable consumers.  Yet, Defendant misrepresents on the labeling of its Product that it

20  contains more protein than it actually does and fails to ensure the Product in fact contains the

21  amount of protein Defendant warrants.  Defendant knew or should have known that the Product

22  contains less protein than labeled because Defendant is the manufacturer of the Product and has

23  quality control testing protocols set in place that should have alerted Defendant of the underfilled

24  nature of the Product's protein content.

25       49.    **WHEN:** Defendant's false and misleading Protein Representation was printed on

26  the Product's nutritional label and online sales pages for consumers to view and rely on during the

27  applicable statutory period.

28       50.    **WHERE:** Defendant's misrepresentation is made on the Product's package

nutritional label and is thus stated at the point of sale in every transaction. The Product is sold online and in brick-and-mortar stores nationwide.

51. **HOW:** Defendant misrepresents on the Product's nutrition label that it contains 17-grams of protein per serving when independent testing revealed that it contains less protein than represented. And as discussed in detail throughout the Complaint, Plaintiffs and Class Members read and relied on Defendant's misrepresentation regarding the protein content before purchasing the Product and in choosing to purchase the Product.

52. **WHY:** Defendant misrepresents the amount of protein in its Product. This representation is material in that it induces consumers like Plaintiffs to purchase the Product for its purported nutritional benefit while charging consumers a price premium. Accordingly, due to the representation, Plaintiffs and Class Members paid a price premium for the Product that they would not have, or would have paid substantially less for, had the Product not been, or risked not being, deficient in protein composition contrary to Defendant's express Protein Representation. As such, Defendant unlawfully profited by selling the Product to thousands of consumers throughout the nation and California, including Plaintiffs and the Class Members.

53. **INJURY:** Plaintiffs and Class Members were injured by Defendant's conduct in that they would not have purchased Defendant's Product, or would not have purchased it on the same terms, had they known that Defendant's Product contained less protein than Defendant expressly represented on the packaging.

## <u>CLASS ALLEGATIONS</u>

54. Plaintiffs seek to represent a nationwide class defined as:

All persons in the United States who purchased the Product for personal or household use during the statute of limitations period (the "**Nationwide Class**").

55. Plaintiffs also seek to represent a California Subclass defined as:

All Class members who purchased the Product for personal or household use in California during the statute of limitations period (the "**California Subclass**").

56. Collectively, the Nationwide Class and California Subclass shall be referred to as the "Classes."

57.     Excluded from the Classes are (1) Defendant and any entities in which Defendant has a controlling interest; (2) Defendant's agents and employees; (3) any Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staff and immediate families; (4) Plaintiffs' Counsel; and (5) Defendant's Counsel.

58.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be modified, expanded, or narrowed by amendment to the Complaint or narrowed at class certification.

59.     ***Numerosity.***  The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate there are hundreds of thousands of members in the Classes.  Plaintiffs do not know the exact number of members in the proposed Classes but reasonably believe, based on the scale of Defendant's business, that the Classes are so numerous that individual joinder would be impracticable.

60.     ***Existence and Predominance of Common Questions of Law and Fact.***  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

(a)     Whether the Product contained the stated amount of protein;

(b)     Whether Defendant knew or should have known the Product had less protein than represented;

(c)     Whether Defendant is liable to Plaintiffs and the Classes for unjust enrichment;

(d)     Whether the underfill of protein renders the Product misbranded;

(e)     Whether Defendant violated the state consumer protection statutes alleged herein;

(f)     Whether Plaintiffs and the Classes have sustained monetary loss and the proper measure of that loss;

(g)     Whether a reasonable consumer would consider the amount of protein in the Product to be material;

(h)     Whether Plaintiffs and the Classes are entitled to restitution and disgorgement from Defendant; and

(i)     Whether the packaging for the Product is deceptive.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                        16

61.    **Typicality.**  Plaintiffs' claims are typical of the claims of the Classes in that Plaintiffs, like all members of the Classes, purchased the Product, which was underfilled with protein, in reliance on the representation and warranty described above.  Plaintiffs and members of the Classes suffered a loss as a result of the purchases and so were injured by Defendant's misconduct in the very same way.  In other words, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

62.    **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs have retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes.  Plaintiffs have no interests that are antagonistic to those of the Classes.

63.    **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiffs, the Nationwide Class, and the California Subclass)**

64.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations

contained in all preceding paragraphs of this Complaint.

65.    Plaintiffs bring this claim individually and on behalf of the Members of the Classes against Defendant.

66.    Plaintiffs and other Members of the Classes are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendant's Product, Plaintiffs and the Members of the Classes engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

67.    Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Product is a "good" within the meaning of Cal. Civ. Code § 1761(a).

68.    Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Product.

69.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

70.    Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

71.    Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

72.    Defendant violated these provisions by misrepresenting the amount of protein contained in the Product.

73.    Defendant's wrongful business practices constitutes a continuing course of conduct in violation of the CLRA.

74.    Plaintiffs and the Members of the Classes suffered economic injury as a direct and proximate result of Defendant's violation because: (a) they would not have purchased the Product on the same terms if they had known that the Product did not contain the amount of protein Defendant affirmatively stated; (b) they paid a price premium compared to products without the misrepresentation alleged herein; and (c) the Product did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

75.     On or about July 25, 2025, prior to the filing of this complaint, Defendant received from Plaintiffs' counsel a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.  Defendant has not taken corrective action.

76.     Plaintiffs and Members of the Classes seek actual and punitive damages, restitution, reasonable costs and attorneys' fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT II
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiffs, the Nationwide Class, and the California Subclass)**

77.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

78.     Plaintiffs bring this claim individually and on behalf of the Members of the Classes against Defendant in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

79.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act."  Cal. Bus. & Prof. Code § 17200.  A business act or practice is "unlawful" if it violates any established state or federal law.  A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

80.     Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

81.     Defendant violated the UCL's proscription against engaging in **<u>Unlawful Business Practices</u>** by misbranding its Product pursuant to 21 U.S.C. § 343, by violating FDA's labeling requirements for protein under 21 C.F.R. § 101.9(g).

82.     Additionally, Defendant also engaged in unlawful business practices by misbranding its Product under California law, Cal. Health & Safety Code §§ 110660 and 110100(a), by failing to follow FDA's labeling requirements for protein.

83.     Finally, Defendant engaged in unlawful business practices by violating the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

84.     In addition, as described more fully above, Defendant's misleading marketing, advertising, packaging, and labeling of its Product is likely to deceive reasonable consumers.  In addition, Defendant has committed unlawful business practices by, *inter alia*, making the presentation and omission of material facts, as set forth more fully above, thereby violating the common law.

85.     Defendant has also violated the UCL's proscription against engaging in **<u>Unfair Business Practices</u>**.  Defendant's acts, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous.  The gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Defendant's deceptive practices led consumers to purchase the Product over other comparable bone broth products that properly represent their protein content.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.  Since consumers reasonably rely on the Product's labels, consumers could not have reasonably avoided such injury.

86.     Plaintiffs and the Members of the Classes suffered a substantial injury by virtue of buying a Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair packaging about the defective nature of the Product.

87.     Finally, Defendant has further violated the UCL's proscription against engaging in **Fraudulent Business Practices**.  Defendant's Protein Representation, as more fully set forth above, is false, misleading and deceived the consuming public.

88.     Plaintiffs lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiffs and Members of the Classes are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

89.     Pursuant to California Business and Professional Code § 17203, Plaintiffs and the Members of the Classes seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

**COUNT III**
**Violations of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiffs, the Nationwide Class, and the California Subclass)**

90.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

91.     Plaintiffs bring this claim individually and on behalf of the Members of the Classes against Defendant in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

92.     The FAL makes it "unlawful for any person … to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

93.     Defendant committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of its Product by representing on the Product's packaging that the Product contained more protein per serving than the Product actually contained.

94.     Defendant knew or should have known that its advertising claims were misleading and/or false.

95.     Defendant knew or should have known, through the exercise of reasonable care, that its representation was false and misleading and likely to deceive consumers and cause them to purchase Defendant's Product.

96.     Defendant's wrongful conduct is ongoing and part of a general practice that is possibly still being perpetuated and repeated throughout the State of California and nationwide. Plaintiffs and the Members of the Classes were injured in fact and lost money and property as a result.

97.     The misrepresentation and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

98.     As a result of Defendant's wrongful conduct, Plaintiffs and the Members of the Classes lost money in an amount to be proven at trial.  They are therefore entitled to restitution as appropriate for this cause of action.

99.     Plaintiffs and the Members of the Classes seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; injunctive relief, reasonable attorneys' fees, and all other relief that the Court deems proper.

100.    Plaintiffs lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to the Members of the Classes are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

101.    Equitable relief is also appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchases of the Product is determined to be an amount less than the premium price of the Product.  Without compensation for the full premium

price of the Product, Plaintiffs and the Members of the Classes would be left without the parity in

purchasing power to which they are entitled.

## COUNT IV
### Breach of Express Warranty
### (On Behalf of Plaintiffs and the Nationwide Class)

102.    Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding

paragraphs as if fully set forth herein.

103.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class

against Defendant.

104.    Plaintiffs bring this claim under the laws of the State of California.

105.    In connection with the sale of the Product, Defendant issued written express

warranties in that Defendant affirmatively warranted that the Product contained a specific amount

of protein.  Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the

Product, expressly warranted that the Product was fit for its intended purpose by making promises

and affirmations of fact on the Product's packaging.

106.    The Protein Representation made by Defendant to Plaintiffs and the Nationwide

Class regarding the Product became part of the basis of the bargain between Defendant, Plaintiffs,

and the Members of the Nationwide Class, thereby creating an express warranty that the Product

would conform to those affirmations of fact, representations, promises, and descriptions.  However,

the Product did not, in fact, contain the amount of protein promised on the packaging.

107.    Plaintiffs and Members of the Nationwide Class suffered economic injury as a direct

and proximate result of Defendant's breach of warranties because: (a) they would not have

purchased the Product on the same terms if they had known that the Product had been falsely

labeled as alleged herein; (b) they paid a price premium for the Product based on Defendant's

express warranties; and (c) the Product did not have the characteristics, uses, or benefits as

promised by Defendant on the packaging.  As a result, Plaintiffs and Members of the Nationwide

Class have been damaged either in the full amount of the purchase price of the Product or in the

difference in value between the Product as warranted and the Product as sold.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

108.    Plaintiffs hereby re-allege and reincorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

109.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

110.    Plaintiffs bring this claim in the alternative to the extent allowed under Fed. R. Civ. P. 8(d)(2).

111.    Plaintiffs bring this claim under the laws of the State of California.

112.    Plaintiffs and Members of the Nationwide Class conferred a benefit in the form of monies paid to Defendant by purchasing a protein-underfilled Product.

113.    Defendant voluntarily accepted and retained this benefit.

114.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Product.  Retention of those monies under these circumstances is unjust and inequitable in light of the misrepresentations of fact made by Defendant in the packaging of the Product.  These misrepresentations caused injuries to Plaintiffs and Nationwide Class Members because they would not have purchased the Product if the true facts had been known.

115.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for a protein-underfilled Product, it would be unjust and inequitable for Defendant to retain it without paying the value thereof.  Accordingly, Plaintiffs and members of the Nationwide Class seek restitution as ordered by the Court.

**PRAYER FOR RELIEF**

WHERFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek Judgment against Defendant, as follows:

(a)    For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives for the Classes, and naming Plaintiffs' attorneys as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues in this action so triable as of right.

Dated: August 25, 2025            **BURSOR & FISHER, P.A**.

By:    */s/ L. Timothy Fisher*
              L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
Karen B. Valenzuela (State Bar No. 357231)
Ryan B. Martin (State Bar No. 359876)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        jglatt@bursor.com
        kvalenzuela@bursor.com
        rmartin@bursor.com

*Attorneys for Plaintiffs*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Blanca Fuentes who resides in Antioch, California and Plaintiff Adam Gottlieb who resides in Mill Valley, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) because Defendant is at home in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 25th day of August, 2025.


                    */s/ L. Timothy Fisher*
                    L. Timothy Fisher